283 So.2d 687 (1973)
DRILLING ENGINEERING, INC.
v.
INDEPENDENT INDONESIAN AMERICAN PETROLEUM COMPANY.
No. 53253.
Supreme Court of Louisiana.
September 24, 1973.
Rehearing Denied October 26, 1973.
Warren D. Rush, Bean & Rush, Lafayette, for plaintiff-applicant.
J. J. Davidson, Jr., V. Farley Sonnier, Davidson, Meaux, Onebane & Donohoe; Lafayette, for defendant-respondent.
MARCUS, Justice.
This is a suit by plaintiff against defendant for the balance due on a written contract for engineering services. An exception to the jurisdiction of the court was sustained by the trial judge. The Court of *688 Appeal affirmed.[1] We granted a writ of review.[2]
The facts are not in dispute.
Plaintiff, Drilling Engineering, Inc., a Texas corporation qualified to do business in the State of Louisiana, with its principal office in Lafayette, Louisiana, furnishes engineering services to the oil industry. Defendant, Independent Indonesian American Petroleum Company, a corporation organized under the laws of Delaware, with its principal office and place of business in San Francisco, California, is principally engaged in the business of exploration for and production of petroleum products in Indonesia. It is neither qualified to do business in Louisiana nor has appointed an agent for service of process.
Paul C. Smith, Jr., defendant's vice-president in charge of production, contacted David G. Williams, president of plaintiff corporation, by telephone for an appointment for the purpose of contracting with plaintiff for engineering services to be rendered in its operation in Indonesia. The parties met in plaintiff's office in Lafayette for approximately two hours. At this meeting, the parties agreed upon the terms of the contract for the services to be rendered by plaintiff. Pursuant to the terms agreed upon, a letter agreement was prepared by Williams and forwarded to the defendant at its office in San Francisco. Defendant revised the second page of the original proposal relative to workmen's compensation (so as to make the California law applicable) and, after signing same, returned it to plaintiff in Lafayette. Upon receipt, Williams signed it in his Lafayette office.
The agreement generally provided that plaintiff would furnish operational engineers in Indonesia for a period of six months at a charge of $150.00 per day per engineer. It also set forth the method of payment. Pursuant to this contract, plaintiff furnished engineers (residents of Lafayette) who performed services for defendant in Indonesia. A total of four engineers worked on the job.
Additionally, operational and personnel problems were thereafter discussed by long-distance telephone by the representatives of the two corporations over the six-month period of the contract. There was an average of two calls per week during this period. Williams also testified that he was requested to review the job progress and made drilling studies based upon information, some of which was furnished from defendant's office. Plaintiff also gave recommendations on how to correct certain operational problems which defendant was having in Indonesia. Invoicing was done in Lafayette, and the checks for payment were forwarded from San Francisco. There was also testimony that defendant corporation corresponded with plaintiff corporation on several occasions.
Pursuant to said contract, plaintiff performed engineering services for defendant in Indonesia and invoiced defendant in the amount of $20,401.28. After applying credits for payment received, there remains an alleged balance due of $5,400.00, which represents the amount sued upon herein.
It is plaintiff's position that, as a result of defendant's transacting business in this state, it is subject to the personal jurisdiction of our courts as to a cause of action arising from said activity under R.S. 13:3201(a). Defendant, on the other hand, contends that the single transaction involved in this case is not sufficient to apply the provisions of the "long-arm" statute without offending "the traditional notions of fair play and substantial justice" citing International Shoe Company v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) and McGee v. International Life Insurance Company, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957).
*689 R.S. 13:3201 in pertinent part provides:
"A court may exercise personal jurisdiction over a nonresident, who acts directly or by an agent, as to a cause of action arising from the nonresident's
"(a) transacting any business in this state;
"(b) contracting to supply services or things in this state;
"* * *"
The provision in our statute, enacted in 1964, is an adaptation of Section 1.03(a) of the Uniform Interstate and International Procedure Act.[3] It was the intention of the Louisiana Legislature in its enactment of R.S. 13:3201 to extend the personal jurisdiction of Louisiana courts over nonresidents to the full limits of due process under the Fourteenth Amendment.[4]
Comment (d) of the Louisiana State Law Institute which appears beneath the statute explains the broad scope intended to be given to "transacting any business."
"(d) `Transacting business,' as used in Subdivision (a), is a term which is much broader than `doing business' as defined by earlier Louisiana cases, and the phrase `does * * * business' of Subdivision (d) conferring personal jurisdiction over a nonresident on a cause of action arising ex delicto or quasi ex delicto. It is intended to mean a single transaction of either interstate or intrastate business, and to be as broad as the phrase `engaged in a business activity' of R.S. 13:3471(1)."
It is conceded by the parties to this litigation that sub-section (b) of our "long-arm" statute does not apply to the facts of this case. All agree that, if there is jurisdiction in this case, it would be under the "transacting any business in this state" provision as contained in sub-section (a) of the statute.
The major argument against allowance of jurisdiction in personam on the basis of the transaction of any business is that it would be a denial of due process. The standards for meeting this constitutional requirement were set forth in International Shoe Company v. State of Washington, supra, in which it was held that: "Due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend `traditional notions of fair play and substantial justice.'" Later, in McGee v. International Life Insurance Company, supra, the tests set forth in the International Shoe Company case were cited and quoted, and the court added: "It is sufficient for purposes of due process that the suit was based on a contract which had substantial connection with that State." Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958) added that there must be "affiliating circumstances" in the forum state to satisfy due process.
The present case does not involve the purchase or sale of goods in this state as was recently considered by this Court in Moore v. Central Louisiana Electric Company, Inc., La., 273 So.2d 284 (1973); Fisher v. Albany Machine & Supply Company, 261 La. 747, 260 So.2d 691 (1972); and Riverland Hardwood Company v. Craftsmen Hardwood Lumber Co., 259 La. 635, 251 So.2d 45 (1971).
Rather, we have here a case involving a business transaction based upon a contract for services confected in Louisiana for services to be performed in Indonesia for a nonresident corporation.
*690 The question of the applicability of R.S. 13:3201 is basically an issue of fact, the determination of which must rest on the particular circumstances of each case.
The facts of this case warrant our conclusion that defendant had sufficient contacts in Louisiana to subject it to the jurisdiction of our courts. We must first bear in mind that it was defendant who contacted plaintiff and came to Louisiana in order to work out the terms and conditions of the contract which was ultimately confected here when plaintiff signed the revised agreement. This business was not solicited by plaintiff. Rather, defendant came to Louisiana and sought out plaintiff. Secondly, while the contract was for services to be rendered by the plaintiff outside the State of Louisiana, it was in the furtherance of the business of defendant. Also very significant is the fact that the contract was for a period of six months which had the effect of a continuing transaction during this period. This is evidenced by the frequent telephone conversations and correspondence between the parties and the fact that defendant was billed periodically based upon the daily engineering services provided. Defendant made further contacts in this State by requesting plaintiff to review the job progress and make drilling studies based upon information supplied from defendant's office.
Based upon the foregoing facts, we conclude that defendant corporation was transacting business within this state within the meaning of R.S. 13:3201(a). We find that there were sufficient contacts in Louisiana to subject defendant to the personal jurisdiction of our courts without being denied due process of law or offending "the traditional notions of fair play and substantial justice."
The judgment of the Court of Appeal affirming the district court in sustaining the exception to the court's jurisdiction in personam is reversed, and the case is remanded for trial on the merits.
BARHAM, J., concurs with reasons.
BARHAM, Justice (concurring).
I concur that the facts of each particular case will determine whether or not an individual is "transacting any business in this state."
I would particularly point out, however, that these facts relate to a "business" from out of state purchasing in Louisiana for furtherance of his "business". The generality of some of the language in the opinion should not be construed to apply to the ordinary non-business consumer who purchases in Louisiana for the purpose of personal consumption and not for furtherance of a business venture. Public policy considerations dictate that this distinction be made in purchasing transactions.
I respectfully concur.
NOTES
[1] 271 So.2d 285.
[2] La., 273 So.2d 294.
[3] Section 1.03 of the Uniform Interstate and International Procedure Act which uses "transacting any business in this state" as a jurisdictional basis, adopts this phrase from the Illinois Act. Ill.Ann.Stat., ch. 110, Sec. 17 (Smith-Hurd 1956). Our statute, R.S. 13:3201(a) directly adopts "transacting any business" from this source.
[4] See Comment (a) in West's LSA-R.S. 13:3201; McMahon, Civil Procedure, 25 La.L.Rev. 28 (1964).