KING, Judge.
The issue presented on this appeal is whether or not the trial court erred in sustaining defendant’s declinatory exception of lack of personal jurisdiction.
Mr. and Mrs. Hilary L. Trahan (hereinafter referred to as plaintiffs), residents of Cameron Parish, Louisiana, brought this suit against Manco Products, Inc. (hereinafter referred to as defendant) for the wrongful death of their eleven-year-old son, Timothy Luke Trahan, alleging that their child’s death was caused by the defective design and manufacture of defendant’s go-cart. Defendant was served under the provisions of the Louisiana Long Arm Statute, LSA-R.S. 13:3201, et seq. In response, defendant filed a declinatory exception of lack of personal jurisdiction. After a hearing on the exception, the trial court sustained the exception and dismissed plaintiffs’ suit. Plaintiffs timely appeal. We reverse and remand.
FACTS
On April 4, 1983, in Cameron Parish, Louisiana, Timothy Luke Trahan, plaintiffs’ son, was a passenger in a go-cart manufactured by defendant and owned by John E. Portie, the plaintiffs’ neighbor. Timothy sustained severe head injuries when the go-cart overturned. On April 7th, Timothy died as a result of the head injuries that he sustained in the accident.
Plaintiffs filed suit in Cameron Parish, Louisiana to recover damages incurred as a result of the death of their son and served defendant with citation and process under the provisions of the Louisiana Long Arm Statute. Defendant filed a declinatory exception of lack of personal jurisdiction.
Evidence presented at the hearing on the exception reveals the following facts. The go-cart involved in this accident was manufactured by defendant, as was admitted by the defendant’s president, William Hatlem. Defendant is a corporation, organized under the laws of Indiana, which manufactures off-road gasoline powered recreational vehicles including go-carts. Defendant is not qualified to do business in Louisiana. It has never incurred or paid taxes in Louisiana, nor has it ever appointed an agent for service of process in this state. Additionally, the defendant has no assets in Louisiana, nor has it ever advertised directly in Louisiana or listed itself in any telephone directories within this state.
Despite the lack of authorization to do business in Louisiana defendant, during the years 1982 and 1983, sold its go-carts to dealers in Louisiana. Specifically, Hatlem admitted that the defendant sold and shipped go-carts direct to Joe’s Lawn Mower Service, a dealer in New Orleans, Louisiana. Hatlem also testified that the defendant had derived approximately $10,000.00 in revenue in each of the years 1982 and 1983 from the wholesale sales of its products in the State of Louisiana. Hatlem estimated a very conservative figure would be that between 20-25 go-carts were sold in Louisiana during each of the years 1982 and 1983.
Defendant is truly a national enterprise. Its products are shipped through at least half of the 50 states. Defendant maintains a “sales order department” to fill orders for replacement parts for its go-carts, from individuals, dealers, and distributors throughout the nation, including those in Louisiana. Defendant supplies an order form for replacement parts in the crates in which its go-carts are shipped. Defendant also advertises its products in national trade magazines and has participated in trade shows in the southern cities of Atlanta and Memphis.
Additionally, defendant sold 200 to 300 go-carts per year to Small Engine Distributors in Kansas City, Missouri when they last did business with them. Defendant was aware that Small Engine Distributors was a mail-order business, which advertised its products for sale nationally. It was from Small Engine Distributors that Mr. Portie, in response to mail advertisements, purchased for his use in Cameron Parish, Louisiana, via mail order, several of *982 defendant’s go-carts, including the one involved in the accident. Mr. Portie had also used the order form for replacement parts, provided by defendant in its shipping crates, to order replacement parts which he purchased direct from defendant and which defendant shipped direct for use in his go-carts located in Cameron Parish, Louisiana.
Plaintiffs brought this suit against defendant for the wrongful death of their son. They alleged that the defective design and manufacture of defendant’s go-cart caused the accident and their son’s death. Defendant was served under LSA-R.S. 13:3201, the Louisiana Long Arm Statute. Defendant filed a declinatory exception of lack of personal jurisdiction, which was sustained by the trial court. The trial court found, as set forth in its oral reasons for judgment given at the close of the hearing on the exception, that there was not “minimum contact” between defendant and the State of Louisiana to satisfy the constitutional due process requirements, as set forth in International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); and McGee v. International Life Insurance Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), needed for the exercise of personal jurisdiction over defendant.
Plaintiffs appeal alleging that the trial court erred in finding that minimum contacts did not exist and in sustaining defendant’s declinatory exception of lack of personal jurisdiction under LSA-R.S. 13:3201(d), the law in effect at the time of the accident. Plaintiffs further contend that legislative changes effective after the accident, adding Section (h) to LSA-R.S. 13:3201 [1], but prior to the hearing on the exception, should have been applied retroactively.
LSA-R.S. 13:3201(d) in effect at the time of the accident provided in pertinent part that:
“A court may exercise personal jurisdiction over a nonresident, who acts directly or by an agent, as to a cause of action arising from the nonresident’s
sjc * * * * *
(d) causing injury or damage in this state by an offense or quasi offense committed through an act or omission outside of this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this state;” [2]
The comments to LSA-R.S. 13:3201, provided by the Louisiana State Law Institute, indicate its purpose was:
“(a) ... to permit the courts of this state to tap the full potential of jurisdiction in personam over nonresidents permitted by *983 International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057 (1945); and McGee v. International Life Insurance Company, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957).”
In Soileau v. Evangeline Farmer’s Co-Op., 386 So.2d 179 (La.App. 3rd Cir.1980), this Court, in discussing LSA-R.S. 13:3201, stated:
“It is well settled that the legislative intent in enacting this statute was to extend personal jurisdiction of Louisiana courts over non-residents to the full limits of due process, i.e., to any non-resident who has ‘minimum contacts’ with this state. Drilling Engineering, Inc. v. Independent Indonesian American Pet. Co., 283 So.2d 687 (La.1973), and Aucoin v. Hanson, 207 So.2d 834 (La.App. 3rd Cir.1968). This jurisprudence requires a liberal interpretation of LSA-R.S. 13:3201 in favor of finding jurisdiction. Adcock v. Surety Research & Inv. Corp., 344 So.2d 969 (La.1977); Latham v. Ryan, 373 So.2d 242 (La.App. 3rd Cir. 1979).
The finding of jurisdiction over nonresidents involves an evaluation of the factual circumstances of the case in light of federal constitutional principles. In order for the proper exercise of jurisdiction in personam over a non-resident there must be sufficient minimum contacts between the non-resident defendant and the forum state to satisfy due process and ‘traditional notions of fair play and substantial justice’ as required by Shaffer v. Heitner, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977); International Shoe Company v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); and McGee v. International Life Insurance Company, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). Whether or not a particular defendant has sufficient minimum contacts with a state is to be determined from the facts and circumstances peculiar to each case. Drilling Engineering, Inc. v. Independent Indonesian American Pet. Co., 283 So.2d 687 (La.1973).” Soileau v. Evangeline Farmer’s Co-Op, 386 So.2d 179, at page 182 (La.App. 3rd Cir. 1980).
In this suit, the contacts between defendant and the State of Louisiana are numerous despite the .fact that defendant is not authorized to do business in Louisiana. As previously mentioned, defendant actually sells its go-carts in Louisiana to at least one dealer. By its President’s own admission, the defendant has sold 20 to 25 go-carts each year in this state for the last several years. This is not an insignificant number when the gravity of the potential danger involved with the operation of allegedly defective products is considered. Additionally, defendant received at least $10,-000.00 for the last several years from the sales of its go-carts and products in Louisiana.
Defendant also advertises in national trade magazines and participates in southern trade shows which attract dealers and retailers of such equipment from Louisiana. Defendant also directly sells and ships replacement parts to persons in Louisiana owning its go-carts. Defendant solicits this business by providing order forms in its shipping crates. Alone, any one of these facts may not be sufficient to satisfy due process requirements, but taken together, they reflect the reality that defendant “regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this State,” and this is sufficient to establish personal jurisdiction under the Louisiana Long Arm Statute.
Admittedly, the go-cart involved in this accident was purchased by Mr. Portie from Small Engine Distributors of Kansas City, Missouri and not directly from defendant. However, that is of little import. Section (d) of LSA-R.S. 13:3201 does not require that the product in question be sold directly to the Louisiana resident by the foreign manufacturer. As the Fourth Circuit stated in Boykin v. Lindenkranar, *984 252 So.2d 467 (La.App. 4th Cir.1971), writ den., 260 La. 15, 254 So.2d 618 (1971):
“In our opinion the intended breadth of R.S. 13:3201(d), for purposes of conferring jurisdiction in manufacturer’s products liability cases, is not limited by traditional notions of contract privity; nor, for such purposes, is ‘independent contractor’ as opposed to ‘agent’ a defense to jurisdiction. These concepts have application where the cause of action arises out of a contract with, or the actions of, the independent contractor, for which the manufacturer would not even have liability. But where the independent contractor’s only relation to the cause of action and to the jurisdiction is that it has served as the regular means of placing the manufacturer’s products :within the jurisdiction, it appears to us unreasonable to conclude that the manufacturer does not do business in the jurisdiction (for products liability purposes)’ because it does not directly sell its products in the jurisdiction.” Boykin v. Lindenkranar, 252 So.2d 467, at page 470 (La.App. 4th Cir.1971), writ den., 260 La. 15, 254 So.2d 618 (1971).
The contacts between defendant and the State of Louisiana in this instance are certainly sufficient to satisfy due process requirements. There are numerous cases in Louisiana jurisprudence which involve equivalent contacts or even fewer contacts than those in this instance, and yet, the courts of this state have found in those cases that the contacts were sufficient to justify exercise of personal jurisdiction over non-resident defendants.
In Moore v. Central Louisiana Electric Co., Inc., 273 So.2d 284 (La.1973), the Louisiana Supreme Court, in finding no due process impediment to the exercise of personal jurisdiction over two non-resident model airplane manufacturers, found that the contacts between the manufacturers and Louisiana were sufficient. In doing so the court noted that:
“... These defendants contend that they do not do many things which business entities could do in Louisiana. However, Sig Manufacturing Company solicits business by national advertising. Its president stated: ‘As a result of the national advertising carried on by the company, some direct sales are made by the company to individuals and dealers in the State of Louisiana.’ Sales are completed by the delivery of merchandise from a warehouse located outside the State of Louisiana.
Sterling Models sold $6,609.72 worth of merchandise in Louisiana from 1966 through 1970. Its principal customer was a distributor in New Orleans. Prior to 1969, there was another distributor in New Orleans to whom sales were made. Other mail order shipments direct to customers in that period would have totaled less than $100.00. Sterling Models advertises its products in national magazines, and the sales of its products, kits for working models of planes and boats, were made through this advertising or by ‘word of mouth’ advertising. Sterling Models was located in Pennsylvania, but its products were intended to be distributed in states other than Pennsylvania.” Moore v. Central Louisiana Electric Co., Inc., 273 So.2d 284, at page 286 (La.1973).
In Boykin v. Lindenkranar, supra, the Fourth Circuit held that a foreign corporation which manufactures cranes was subject to the jurisdiction of Louisiana courts in a products liability case even though the corporation did not sell cranes within the state nor maintain offices or agents within the state, but rather sold its cranes to an independent intermediary outside of the state which then sold the cranes in the United States, where a substantial number found their way into this state. It should be noted that there were only nine cranes within Louisiana. In concluding that jurisdiction was proper, the Court found:
“The manufacturer here is aware that the independent intermediary Heede sells its cranes for use in the United States. The only reasonable conclusion is that the manufacturer intends that its cranes shall be sold for use in the United States, *985 including every state in which the independent intermediary’s efforts may produce the desired results. Relator does not manufacture cranes to sell them to a collector. It must be held to know and intend the placement and use of its cranes in the United States, including Louisiana, and by whatever arrangement it causes its cranes to be here placed and used it is accomplishing its business purposes and here doing business.” Boykin v. Lindenkranar, 252 So.2d 467, at page 470 (La.App. 4th Cir.1971).
It is more than clear that in this instance defendant’s contacts are at least as numerous and significant as those in the cases discussed above.
Under the facts established in this case, we find there is no constitutional barrier to the use of the Louisiana Long Arm Statute to obtain jurisdiction over the defendant. The requirements of due process and the “traditional notions of fair play and substantial justice” have been satisfied. Defendant had sufficient contact with Louisiana to warrant exercise of personal jurisdiction over it. There was “an offense or quasi-offense committed through an act or omission outside of this state” (the allegedly defective design and manufacture of the go-cart). Defendant “regularly does or solicits business” by actually selling and shipping its products to Louisiana and derives “substantial revenue” from those products sold in Louisiana within the meaning of LSA-R.S. 13:3201(d)[3] in effect at the time of the accident sued on.
Having found that LSA-R.S. 13:3201 applies and that personal jurisdiction over defendant is proper, we find it unnecessary to address plaintiffs’ additional argument that Section (h) of LSA-R.S. 13:3201, which was added to the statute by a 1984 amendment, allows this state to exercise personal jurisdiction over defendant.[4] For this reason we decline to address the question of whether Section (h) is to be applied retroactively.
For the reasons set forth we find that there were sufficient minimum contacts by the defendant in Louisiana to warrant exercise of personal jurisdiction over defendant, Manco Products, Inc., and that the trial court erred in sustaining defendant’s exception of lack of personal jurisdiction and dismissing plaintiffs-appellants’ suit. We therefore reverse and set aside the trial court’s judgment granting defendant-appel-lee’s declinatory exception and dismissing plaintiffs’ suit, and remand this suit to the trial court for further proceedings. All costs of this appeal are taxed against defendant-appellee.
REVERSED AND REMANDED.

. Section (h) of LSA-.R.S. 13:3201 is now numbered as Section 8 of LSA-R.S. 13:3201. For the substance of Section 8, see Footnote 2 of this opinion.

. Currently LSA-R.S. 13:3201, effective September 3, 1984, provides that:
“A court may exercise personal jurisdiction over a nonresident, who acts directly or by an agent, as to a cause of action arising from any one of the following activities performed by the nonresident:
(1) Transacting any business in this state.
(2) Contracting to supply services or things in this state.
(3) Causing injury or damage by an offense or quasi-offense committed through an act or omission in this state.
(4) Causing injury or damage in this state by an offense or quasi-offense committed through an act or omission outside of this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives revenue from goods used or consumed or services rendered in this state.
(5) Having an interest in, using or possessing a real right on immovable property in this state.
(6) Non-support of a child or spouse or a former spouse domiciled in this state to whom an obligation of support is owed and with whom' the nonresident formerly resided in this state.
(7) Parentage and support of a child who was conceived by the nonresident while he resided in or was in this state.
(8) Manufacturing of a product or component thereof which caused damage or injury in this state, if at the time of placing the product into the stream of commerce, the manufacturer could have foreseen, realized, expected, or anticipated that the product may eventually be found in this state by reason of its nature and the manufacturer’s marketing practices."

. Section (d) of LSA-R.S. 13:3201 is now numbered as Section 4 of LSA-R.S. 13:3201. For the substance of Section 4 see Footnote 2 of this opinion.

. Section (h) of LSA-R.S. 13:3201 is now numbered as Section 8 of LSA-R.S. 13:3201. For the substance of Section 8, see Footnote 2 of this opinion.