373 So.2d 242 (1979)
John H. LATHAM, Plaintiff-Appellant,
v.
Harold H. RYAN, International Resort Properties, Inc., and Oceana Garden Villas Association, Inc., Defendant-Appellees.
No. 7079.
Court of Appeal of Louisiana, Third Circuit.
June 29, 1979.
*243 Logan, deLaunay & Stutes, Gerald C. deLaunay, Lafayette, for plaintiff-appellant.
Bean & Rush, Ernest L. Parker, Lafayette, for defendants-appellees.
Before DOMENGEAUX, GUIDRY and STOKER, JJ.
STOKER, Judge.
This is an action for compensation due under an oral employment agreement brought by plaintiff, John H. Latham, against defendants, Harold J. Ryan, International Resort Properties, Inc. and Oceana Garden Villas Association. In response to the plaintiff's petition, the defendants filed an exception of lack of personal jurisdiction.[1] The trial court sustained the exception and dismissed the case. From this ruling, plaintiff appealed. The sole issue before this court on appeal is whether the defendants were subjected to the personal jurisdiction of Louisiana Courts by service pursuant to the Louisiana Long Arm Statute (LSA-R.S. 13:3201).
A hearing on the exception of lack of personal jurisdiction was held on November 6, 1978. At this hearing, the only evidence adduced was the testimony of the plaintiff. It was stipulated that the two nonresident corporate defendants had not registered with the Secretary of State of Louisiana to do business in this State and had not appointed agents for the service of process in Louisiana. The facts as established by the plaintiff's testimony as they relate to the issue of the court's jurisdiction over the defendants are as follows.
On or about September 26, 1977, the plaintiff was telephoned by one of the defendants, Harold J. Ryan, concerning the possible employment of the plaintiff. After plaintiff had thought about the proposition, he called Ryan the next day. As a result of this second phone conversation and a return call made by Ryan, plaintiff tentatively agreed that he would go to Florida to discuss possible employment. This tentative agreement to go to Florida was conditioned upon plaintiff being allowed to use his Louisiana home as his base of operations for his employment with Ryan, since plaintiff had an ongoing business in Louisiana.
After one or two phone conversations in the days immediately following the initial conversations, plaintiff did travel to Florida to discuss a possible employment agreement with Ryan. In Florida, Ryan and the plaintiff apparently reached an agreement with respect to the terms of plaintiff's employment. However, the alleged agreement was not at that time, nor at any future time, reduced to writing. The details of plaintiff's work was to sell sharing plans involving resort areas primarily in Florida, supervising other sales persons and attending meetings to explain the nature of the properties in which the defendants were dealing. It is important to note that while not all of the property was located in Florida, none of it was located in the state of Louisiana. It is also of importance to note that, according to plaintiff's uncontroverted testimony, the defendants did agree to allow the plaintiff to maintain his base of operations in Louisiana. However, this concession was entirely for plaintiff's benefit at his specific request. Nothing in the record indicates he was to do any sales work in Louisiana. In fact, the record indicates he was to do promotion work primarily in Florida and Kentucky.
In the next several months, plaintiff commenced to perform the duties mandated by his employment with the defendants. Plaintiff admits that during this time he never once met with anybody in Louisiana while in the course of his employment with *244 the defendants. Plaintiff also admits that neither the defendants nor anyone employed by them ever came to Louisiana with respect to this business venture. However, plaintiff did testify that he spent many hours preparing for his business trips while at his home in Louisiana, and did receive some necessary pamphlets at his Louisiana address. He also testified that he purchased many of the items necessary to his employment while in Louisiana. It is also apparent that during this time the plaintiff had many telephone conversations with defendants. The only compensation which the plaintiff has received in connection with his employment was the payment of the expenses of his initial trip to Florida.
It is our conclusion that the only Louisiana contacts which we may properly consider were through the initial telephone calls.
As noted above, the issue presented by this appeal is whether or not the defendants were subject to the personal jurisdiction of the courts of Louisiana. A resolution of this issue hinges upon a determination of whether or not the defendants had "minimum contacts" with Louisiana which are sufficient to satisfy their right to due process of law under the United States and Louisiana Constitutions. Shaffer v. Heitner, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977); International Shoe Company v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); McGee v. International Life Insurance Company, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). Whether or not a particular defendant has minimum contacts with a state is to be determined from the facts and circumstances peculiar to each separate case. Drilling Engineering, Inc. v. Independent Indonesian American Pet. Co., 283 So.2d 687 (La.1973). The test to be applied in determining whether there have been "minimum contacts" with a particular state was first elucidated in the International Shoe case. This test requires that the particular contacts that the nonresident defendant has with the state be such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."
In the instant case, plaintiff effected service upon the defendants through the means of the Louisiana Long Arm Statute, which is contained in LSA-R.S. 13:3201. Plaintiff relies on part of this statute to support the proposition that the defendants are subject to personal jurisdiction. The pertinent part of LSA-R.S. 13:3201 reads as follows:
A court may exercise personal jurisdiction over a nonresident, who acts directly or by an agent, as to a cause of action arising from the nonresident's
(a) transacting any business in this state;

* * * * * *
It is settled that the legislative intent of this statute was to extend personal jurisdiction of Louisiana courts over nonresidents to the full limits of due process, i. e., to any nonresident who has "minimum contacts" with the State of Louisiana. Drilling Engineering, Inc. v. Independent Indonesian American Pet. Co., supra, and Aucoin v. Hanson, 207 So.2d 834 (La.App.1968). This jurisprudence requires a liberal interpretation of R.S. 13:3201 in favor of finding jurisdiction. Adcock v. Surety Research & Inv. Corp., 344 So.2d 969 (La.1977).
Applying the cited statutory and jurisprudential precepts to the facts and circumstances of the instant case, we hold that the defendants are not subject to the personal jurisdiction of Louisiana Courts, and accordingly we affirm the trial court's action in sustaining the exception. After a review of the record we conclude that sufficient minimum contacts have not been shown to support a finding of personal jurisdiction.
In support of his assertion that the defendants are subject to the personal jurisdiction of Louisiana courts, plaintiff relies primarily on the Drilling Engineering case, citation above. That case was also a suit on an employment contract, albeit a written agreement as opposed to the alleged oral agreement herein. The agreement in Drilling Engineering arose as a result of an agent of a defendant nonresident corporation, without solicitation, contacting the *245 plaintiff corporation by phone. During this phone conversation the parties agreed to meet in Louisiana to discuss the possibility of the defendant's employment of the plaintiff corporation. At the Louisiana meeting, the parties came to agreement upon a contract of employment. On the next day, plaintiff put these terms in a letter and mailed it to the defendant nonresident. The defendant made some minor changes in the draft of the contract, signed it and then returned it to the plaintiff who also signed. Thereafter, plaintiff performed engineering services for the defendant over the next six months. During this six-month's period, the job which the plaintiff was performing for the defendant required frequent communication between the parties via mail and telephone. Suit arose when the defendant failed to pay the plaintiff the full amount allegedly due under the contract.
The Supreme Court, with Justice Marcus writing for the court, found that these factors supported a finding of personal jurisdiction. The circumstances which the court found supported jurisdiction in the Drilling Engineering, Inc. case are set out in the following quotation found at 283 So.2d 690:
The facts of this case warrant our conclusion that defendant had sufficient contacts in Louisiana to subject it to the jurisdiction of our courts. We must first bear in mind that it was defendant who contacted plaintiff and came to Louisiana in order to work out the terms and conditions of the contract which was ultimately confected here when plaintiff signed the revised agreement. This business was not solicited by plaintiff. Rather, defendant came to Louisiana and sought out plaintiff. Secondly, while the contract was for services to be rendered by the plaintiff outside the State of Louisiana, it was in the furtherance of the business of defendant. Also very significant is the fact that the contract was for a period of six months which had the effect of a continuing transaction during this period. This is evidenced by the frequent telephone conversations and correspondence between the parties and the fact that defendant was billed periodically based upon the the daily engineering services provided. Defendant made further contacts in this State by requesting plaintiff to review the job progress and make drilling studies based upon information supplied from defendant's office.
While the case at hand presents many of the same considerations that were present in Drilling Engineering, Inc., there are two most important and ultimately determinative distinctions. First of all, in the present case, the defendants have never been present in Louisiana with respect to their business, while in Drilling Engineering, Inc., the details of the contract were discussed in a Louisiana meeting. Secondly, the contract in Drilling Engineering, Inc. was apparently confected in Louisiana unlike the present case in which the alleged agreement was admittedly perfected in Florida. Hence, plaintiff's reliance on the Drilling Engineering, Inc. case is not persuasive.
The plaintiff additionally relies on cases from our sister states and the federal courts. Chief among these cases is Sporcam v. Greenman, 340 F.Supp. 1168 (S.D. Iowa, 1972). However, Sporcam is distinguishable from the present case on the grounds that in that case the nonresident defendant was at some time present in the forum state in regard to his business and the contract was confected in the forum state. The other cases cited by plaintiff are also distinguishable on one of these grounds. In oral argument counsel for plaintiff cited for the court's consideration the case of Rose v. Silver, 394 A.2d 1368 (D.C.App.1978). We do not find the case factually apposite or controlling.
We believe that the case which controls the decision in the present case is Adcock v. Surety Research and Inv. Corp.,[2] supra. Adcock dealt with a suit upon a contract for *246 legal services between the plaintiff and certain of the defendants. Our Supreme Court, with Justice Marcus again writing for the majority, found jurisdiction over the defendants who had been present in Louisiana, either personally or through an agent, concerning the formation of the contract, but upheld the trial court's dismissal of the defendants who had not been so present. With respect to the defendants over which the court found no jurisdiction, Justice Marcus stated the following at 344 So.2d 973:
As for the remaining individual defendants, namely Gunnell, Burton and Halford, we reach a different result. The record does not manifest any contact by these defendants with the state of Louisiana. They were never present in the state either directly or indirectly through an agent, for the record is devoid of any evidence which would indicate that Johnson acted as an agent for them. The contract itself bears no such showing and the fact that it was taken to California for their signatures is a strong indication that Johnson had no authority to bind them in any manner. In the absence of any connection with the state, an exercise of personal jurisdiction over these three defendants would violate the due process standards set forth in International Shoe Company v. State of Washington, supra, and McGee v. International Life Insurance Company, supra. Therefore, we conclude that these defendants are not subject to the jurisdiction of the Louisiana court.
From this pronouncement we conclude that our Supreme Court has established as a requirement that the nonresident over whom personal jurisdiction is sought must have had some physical contact or meaningful connection with the state. Under this clear mandate we are bound to find a lack of personal jurisdiction over the defendants herein. The record reveals that defendants in the present case never appeared in Louisiana either personally or through an agent. To force the defendants to come to Louisiana to defend this suit would be unreasonable and would offend "traditional notions of fair play and substantial justice." International Shoe, supra.
For the foregoing reasons, the district court's judgment sustaining the defendants' exception of lack of jurisdiction is affirmed at plaintiff's costs.
AFFIRMED.
NOTES
[1] This exception was erroneously captioned as a "dilatory" exception. While in actuality the exception is declinatory, the improper designation does not prevent this court from doing substantial justice.
[2] For another analogous case which supports our decision herein, see Saffrhan v. Buck Steber, Inc., 413 F.Supp. 31 (E.D.La.1975).